MULHOLLAND, Respondent, v. AYERS, Governor, et al., Appellants.

(No. 8,048.)

(Submitted December 2, 1939.  Decided January 16, 1940.)

[99 Pac. (2d) 234.]

560

Cause submitted on briefs of counsel.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Lee Metcalf,* Assistant Attorney General, for Appellants.

*Mr. Wesley W. Wertz,* for Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff was elected senator of Silver Bow county on November 8, 1938, for a four-year term commencing on January 2, 1939. On February 17, 1939, he filed as a candidate for mayor of the city of Butte, but waged an unsuccessful campaign. He did not file a resignation as state senator. He brought this action to enjoin defendants from taking the necessary steps to fill the vacancy supposed to exist because of the provisions of Chapter 116, Laws of 1937, and sought a declaratory judgment declaring the meaning, scope and application of that Chapter.

Defendants' demurrer to the complaint was overruled; they declined to answer. Judgment was entered declaring that Chapter 116 is unconstitutional and of no force or effect, that plaintiff is still the state senator from Silver Bow county and has the right at the next election to become a candidate for any elective office under the laws of Montana for which he is legally qualified, and that he need not resign from his present office to become such candidate, and that, if he does become such candidate, there will be no vacancy in the office of state senator ipso facto. Defendants have appealed from the judgment.

Section 1 of Chapter 116 of the Laws of 1937 provides, in substance, that whenever any person holding any office under

the laws of the state, the term of which is longer than two years, shall become a candidate for election to any elective office, other than for reelection to the office held by him, he shall resign the office held by him, and if he fails to do so the office shall become vacant and unoccupied ipso facto. Section 2 provides for filling such vacancies. Section 3 provides: ''This Act shall not apply to any office, position or place, appointive or elective, the incumbent of which is prohibited by law (a) from succeeding himself in said office, position or place, or (b) the incumbent of which is prohibited by law from enjoying more than two (2) successive terms in said office, position or place, or (c) to any office, position or place for which there is no salary, per diem, fees or emoluments prescribed or accruing by law, or (d) to the office of state representative, or to the office of state senator, unless the candidacy of the incumbent for a different office may result in a vacancy in the office of state senator in which case the provisions of this Act shall apply, or (e) to the in· cumbent of any office whose term of office expires within (70) seventy days after the ensuing general election.''

Section 4 of the Act provides: ''This act shall be construed as a condition subsequent to the tenure or holding of any office, appointment, position or place under the State of Montana, as aforesaid; and it shall not be construed as imposing or providing any additional qualifications for office in any case where such qualifications are now prescribed by the constitution of the United States or the constitution of Montana to the exclusion of the prescription of additional qualifications by the legislative assembly.''

Section 5 is the usual separability clause to the general effect that invalidity of a part of the statute will not affect the remainder.

The question presented is whether there is now a vacancy in the office of state senator for Silver Bow county. In considering this question we must look first to the object and purpose of the Act and the evil sought to be remedied by it. It is plain that the purpose of Chapter 116 is to encourage the fill-

ing of vacancies by election, rather than by appointment, by reducing the duration of appointments and to discourage a person already holding one office carrying more than a two-year term and the term of which would not expire until more than seventy days after the ensuing general election, from retaining that office while endeavoring to obtain another at such election. The effect of Chapter 116 is to cause a vacancy to exist in time so that it can be filled by election at the same election which causes the vacancy, and making the interim appointment of short duration.

The question arises whether Chapter 116 was intended to apply to a person holding an office the incumbent of which is chosen at the regular general election where he seeks the office of mayor of a city, the election taking place, as it does, not at the general election, but on the first Monday of April (sec. 5003, Rev. Codes).

Section 1 of the Act makes it applicable when the incumbent of an office files as a candidate at any "primary or special or general election." The municipal election provided for in section 5003 is not a primary election. It is not the general election as defined in section 531, Revised Codes; nor is it a special election within the definition of that term in section 532. If it is a special election within the meaning of Chapter 116, and if that Chapter was intended to cover such a situation, it would come in conflict with the Fourteenth Amendment to the federal Constitution, as denying the equal protection of the laws. It would amount to an arbitrary classification. While we realize that some discriminations are for the best interests of society (*Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245, 43 Sup. Ct. 83, 67 L. Ed. 237), and that a classification will not be condemned by the courts unless it precludes the assumption that it was made in the exercise of legislative judgment and discretion (*Bank of Miles City* v. *Custer County*, 93 Mont. 291, 19 Pac. (2d) 885; *State* v. *Safeway Stores*, 106 Mont. 182, 76 Pac. (2d) 81), yet it is the settled rule that unless there be some reasonable basis for the classification resting upon sub-

stantial distinctions which really make one class different from another, the Act must to that extent fall. (*State* v. *Sunburst Refining Co.*, 73 Mont. 68, 235 Pac. 428.)

We see no reasonable justification for a distinction between the holder of an office with a term of two years, and the holder of one for four or six years that would warrant different treatment when the holder of such an office is a candidate for a municipal office, the election for which takes place in April. Under Chapter 116, if applied to offices sought at a municipal election, as here, the holder of a four or six-year term would be obliged to give up his office to run for a municipal office, whereas the holder of a two-year term would not. As applied to an office filled at the general election, we can see justification for this classification. Without Chapter 116, the incumbent of a two-year term, by running for and accepting a different office filled at the general election held in the last year of his term, causes no vacancy in the term held by him which must be filled by appointment. The office held by him would be filled by the electorate at the regular general election, and this whether he is a candidate for reelection or whether he runs for some other office. On the other hand, before the passage of Chapter 116, the holder of a four or six-year term filled at the general election who became a candidate for another office during the second year of his term, or during the fourth year in the case of a six-year term, would cause a vacancy in the office held by him which would have to be filled by appointment until the next general election, which appointment would continue for approximately two years. Chapter 116 requires such a candidate to resign in time so that the vacancy would be filled at the same election which gives rise to the vacancy, making the appointment continue for but a few months.

When the object and purpose of the Act is considered, we can see a reasonable justification for a different classification between the holder of a two-year term as against the holder of a four or six-year term, when the incumbent seeks an office which is filled at the regular general election. We can see no justification, however, for such a classification when the incumbent of

an office regularly filled at the general election seeks another office which is filled at the municipal election, as here. Hence, Chapter 116, so far as it attempts to declare a vacancy in an office regularly expiring on the first Monday in January because the incumbent seeks an office at a municipal election held in April, is unconstitutional and void as being in conflict with the equal protection clause of the federal Constitution.

It follows, therefore, that the plaintiff is still the senator from Silver Bow county.

The fact that the Act may be unconstitutional in part does not prevent us from upholding it in other respects. (*Dunn* v. *City of Great Falls,* 13 Mont. 58, 31 Pac. 1017; *State ex rel. Bray* v. *Long,* 21 Mont. 26, 52 Pac. 645.) Section 5 of the Act in effect declares that if part of the Act is found to be invalid, such finding shall not affect the remainder of the Act.

As above stated, we are asked to render a decree under our Uniform Declaratory Judgment Act (secs. 9835.1 et seq., Rev. Codes), declaring plaintiff's right to become a candidate for some other office. This brings up the question whether the Act applies to a state senator at all.

As above noted, section 3 of the Act enumerates certain exceptions and takes certain offices without the provisions of the Act. That section provides in part: "This Act shall not apply * * * (d) to the office of state representative, or to the office of state senator, *unless the candidacy of the incumbent for a different office may result in a vacancy in the office of state senator in which case the provisions of this Act shall apply.*" Obviously, the Act does not apply to the office of state representative because his term of office is not longer than two years. Therefore section 1 of the Act exempts that office regardless of section 3. When the original bill was introduced it did not contain the italicized portion of section 3, subdivision (d). That was added by way of amendment. It is plain, therefore, that the Act does apply to a state senator if he becomes a candidate for a different office which may result in a vacancy in the office of state senator.

Section 7, Article V of our state Constitution provides: "No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under the state, and no member of congress, or other person holding an office (except notary public, or in the militia) under the United States or this state, shall be a member of either house during his continuance in office." It is difficult to conceive of any office the incumbent of which is chosen at a general election which, if accepted by one holding the office of state senator, would not cause a vacancy in the senatorship under this section of the Constitution. The active candidacy of plaintiff for another office would carry the implication that, if elected to the office, he would accept it. He is required to so state when he files for the office (sec. 641, Rev. Codes). Hence we conclude that his candidacy for another office, the incumbent of which is chosen at the general election, may result in a vacancy in the office of state senator within the meaning of section 3 of the Act. That being so, Chapter 116 has application, and the exception contained in section 3 of the Act does not relieve plaintiff of the consequences provided for in the Act, should he become a candidate at a general election for an office within the prohibition contained in section 7, Article V of our Constitution.

The next question that suggests itself is whether Chapter 116 conflicts with section 11, Article IX of the Montana Constitution, reading: "Any person qualified to vote at general elections and for state officers in this State shall be eligible to any office therein except as otherwise provided in this constitution, and subject to such additional qualifications as may be prescribed by the legislative assembly for city offices and offices hereafter created."

Section 4 of Chapter 116 expressly states that the Act is not to be considered as adding additional qualifications for eligibility to public office. This legislative declaration is in accordance with the facts. The requirement that the holder of a public office must tender his resignation upon becoming a candidate for another office, or that his filing for another office would work a resignation ipso facto, does not prescribe additional qualifications for

the office. To be eligible means, "Fitted or qualified to be chosen or elected." (Webster's New International Dictionary.) A person may possess the requisite qualifications or may be eligible to many different offices. The legal requirement, however, that he may not hold more than one at a time does not affect his eligibility to hold them all. On the other hand, the requirement that an office held by one who becomes a candidate for another becomes vacated goes not to his eligibility to hold either office. He is still qualified in the legal sense to hold either. Chapter 116 is simply a limitation upon the right to retain the office already held when seeking another. It is not a limitation upon the right to seek another office. The incumbent of an office has the choice under the statute to retain it unmolested, or give it up and seek another.

Plaintiff contends that Chapter 116 has the effect of shortening the term of office, and therefore runs counter to section 2, Article V of the Constitution, which fixes the term of state senator at four years. The Chapter does not purport to shorten the term of office. The term of office remains as before. The right to hold the office is alone affected. That right is affected only by the voluntary act of the incumbent of the office. Hence Chapter 116, instead of shortening the term of an incumbent, endeavors to dissuade him from shortening his term by his own act of seeking a different office. It should be noted, too, that Chapter 116 was in effect at the time plaintiff was elected to the office of state senator, and hence, when he accepted the office he took it subject to existing laws dealing with the question of its abandonment or forfeiture.

Plaintiff contends that, since the Constitution provides for the impeachment of certain officers for certain causes (sec. 17, Art. V), it is not proper for the legislature to add certain other grounds for removal. The rule is as contended for by plaintiff. (22 R. C. L. 563.) Chapter 116 was and is not a measure adding causes for removal of public officers. It simply provides one method by which a public officer may voluntarily abandon his office.

We have already held that the acceptance of an incompatible office by one already holding office operates as a resignation of the first. (*State ex rel. Klick* v. *Wittmer*, 50 Mont. 22, 144 Pac. 648.) Chapter 116 simply extends the rule of resignation or abandonment of an office to those who become candidates for office when they already hold one office, the term of which exceeds two years and does not expire within seventy days after the ensuing general election. The situation is similar to that where an officer leaves the state or changes his residence from the territorial jurisdiction of the office. In such a situation he is held to have abandoned his office. (22 R. C. L. 560.) We know of no constitutional provision prohibiting the legislature from declaring that the mere filing for a second office by the holder of one office, under circumstances covered by Chapter 116 operates as an abandonment of the first.

The contention is made that the act of filing for office is in itself a legal and innocent act, and that the legislature cannot declare it a ground or cause for forfeiture or abandonment of an office already held. As above noted, there are reasons for the enactment of the law sufficient to have impelled affirmative action by the legislature. We cannot pronounce it as arbitrary and unwarranted as applied to offices filled at the general election. The legislation does not appear to be arbitrary and capricious. We cannot say that it is not a reasonable method of treatment of what the legislature was warranted in concluding was an evil. There is some basis, as above pointed out, for different treatment of different offices as made by Chapter 116, when applied to offices filled at the general elections. We see no reason for condemning Chapter 116 on any other ground than that hereinabove set out.

In considering the question of the constitutionality of the statute we keep in mind the oft-repeated rule that it will be presumed valid and we will not condemn it unless it is shown beyond a reasonable doubt to be in conflict with some constitutional provisions. We also keep in mind that, unlike the Constitution of the United States which is a grant of power, ours is a limitation of power, and the legislature of the state

has the power to do as it pleases, save and except as limited expressly or by necessary implication by some constitutional provision.

Hence it follows that plaintiff may not become a candidate in 1940 for an office to be filled at the general election in 1940 without such candidacy working a resignation or abandonment of his office of state senator.

The judgment appealed from is affirmed so far as it holds that plaintiff is still the senator from Silver Bow county, and reversed in other respects.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ARNOLD concur.

MR. JUSTICE ERICKSON:

I agree with that portion of the majority opinion which determines that the relator is still senator from Silver Bow county. However, I cannot agree with what is said as to the constitutionality of Chapter 116 as applied to the relator in the event he files at the forthcoming election for an office other than mayor of some municipality.

It is the theory of the majority that Mulholland by filing for the second office either resigns from the first or abandons it. They say that, since under the Act he may retain his office by refraining from filing for the second, his act shows a voluntary relinquishment of the office. It is also their position that the legislature has not said that his filing for the second office shall operate to remove him from the first office, but that the legislature has provided, in effect, that in the event he files for a second office it will be conclusively presumed that he intended to abandon the first office or to resign from it, since the act must show that intention to make the effect of the filing either abandonment or resignation.

In the first place, the legislature did not provide what the majority says it has, and no language is to be found to indicate that it has. The pertinent part of Chapter 116 has heretofore been quoted, but to emphasize the point it is here repeated in

substance: In the event certain incumbents file for a second office they shall resign from the first, "and in the event of the failure so to resign said office the same shall ipso facto become wholly vacant and unoccupied." The language, then, is not that his filing for the second office shall be deemed a resignation of the first, but instead the legislature expressly negatives the idea that the filing is a resignation, as otherwise there would be no necessity for the provision "he shall resign," and certainly the negative language "in the event he shall not resign" clearly shows that the legislature did not contemplate that the filing after failure to resign should constitute resignation, either express or implied. The language could not be clearer to show that the legislature thought the Act did. The Act says that in the event he fails to resign the office, the same shall become ipso facto vacant. That can mean but one thing, and that is his filing shall operate to end his tenure of the office, without regard to his intention or desire as to the retention of the office. The language is plain and clear and admits of no other construction. It matters not what the termination of his tenure of office be called, the fact remains that upon filing for the second office he is out of the first, and that though the act of filing was voluntary on his part, the relinquishment of the office was not. The relinquishment is not accomplished by a resignation of the office or by any provision that indicates the legislature was providing that the filing should ipso facto constitute a resignation or a conclusive presumption of resignation. The act of filing alone contains none of the elements of a resignation. The ordinary rule as to resignations is stated in 22 Ruling Case Law, at page 556, "to constitute a * * * resignation of public office, there must be an intention to relinquish a part of the term, accompanied by the act of relinquishment."

In searching for theories upon which to sustain the Act, the majority then hits upon the idea that it is an abandonment of the office. Again it is clear that the legislature did not contemplate that the filing for the second office would reach that result. What I have said concerning resignation is applicable here. The legislature contemplated but one thing, and that

was that his filing for the second office would terminate his tenure of the office, and that by operation of the law upon his filing for the second office he would be removed from his office. Under any definition of abandonment of office, the filing for the second office cannot be declared an abandonment of the first.

We are handicapped in our study of the matter for the reason that no other state of the Union has a comparable statute. To my mind this is significant to indicate that either no other states with constitutional provisions as to qualifications of public officers, their terms and grounds of removal such as ours—and most of them have such provisions—are aware of the evils here sought to be cured, or else that the legislatures in other states feel that they are bound by the constitutional provisions. The term "abandonment of office" has, however, been defined by several courts, and specific examples of Acts that constitute abandonment may be found.

In 46 C. J. 980, it is said: "Abandonment is a species of resignation, but differs from resignation in that resignation is a formal relinquishment, *while abandonment is a voluntary relinquishment through non-user.*" (Italics supplied.)

Reference is made to *State ex rel. Klick* v. *Wittmer*, 50 Mont. 22, 144 Pac. 648, in the majority opinion, which is one of many cases which may be found that hold that the acceptance of an incompatible office operates as a resignation from the first office. These cases hold in effect that if the officer accepts the second office, knowing that his first office and the second office are incompatible, that is conclusive of his intention to resign the first. Thus, if the law declares that the doing of a certain act shall constitute abandonment or resignation, and if it in fact does show that present intent to resign, or does show an abandonment, it is within the power of the legislature to so declare, and the doing of the act is conclusive of the intent to give up the office, it may be that the court might say of Mulholland that, had he filed for some other office than mayor at the last election, with Chapter 116 on the statute books, the fact that it was there would be conclusive proof of his intention to resign or abandon

his office. That question does not arise, as he is saying here that he wants to file in the future, and he tells us that he does not want to resign and asks in advance what the effect of Chapter 116 is.

What inference could be drawn from the filing for the second office before the enactment of Chapter 116? Merely this, that in the event Mulholland were elected to the second office, and in the event he accepted it, he would consider the acceptance of the second office a resignation from the one he now holds: that in view of the incompatibility of the two offices his acceptance of the second office with the knowledge of the incompatibility of the two, would conclude him from denying that the acceptance of the second was not a resignation from the first. Before the Act it could not be said that the filing for the second office operated to abandon the first or to resign from it at the time of filing, or to indicate any intention to resign from or abandon the office at the time of the filing. Without the statute, the courts could not say that the filing indicated any intention to presently resign from or abandon the office, as it is true of the other examples cited. The most that could be said was that some time in the future, if things went a certain way, he would resign. Every authority on these points is to the effect that the intention to abandon or resign, either by express declaration or by acts from which abandonment may be implied, must be a present unqualified intention to resign, or that there have been acts which have already shown an abandonment of the office.

Under the theory of the majority, Chapter 116 provides grounds for inferring a resignation or abandonment, which would not have been sufficient before the Act. The question then arises: What is to prevent the legislature from declaring any action which does not include non-user or intention to resign or abandon, and does not under the ordinary understanding of voluntary relinquishment, indicates a voluntary giving up of the office either a resignation or an abandonment? That necessarily requires a study of our constitutional provisions relative to term of office and removal of officers. It is admitted by the majority

that the legislature cannot add to the grounds of removal of officers, either by impeachment as provided in Article V, section 17, of the Constitution, or otherwise as provided in Article V, section 18. It is also stated in the majority opinion that the term of office may not be shortened. These provisions are exclusive, and the legislature may not add to them. It is stated in the majority opinion that the reasons for the enactment of Chapter 116 are these. The successful election of Mulholland and his assumption of office could result in a vacancy in the office of senator which must be filled by appointment, and that appointment would run for nearly two years; while, if he resigns at the time of filing, someone else would run for his office at the same election, and the appointed officer who takes his place will only be appointed for a few months. In other words, the legislature has said that his seeking the second office is evil, as it may result in his election and his acceptance of it, and that will necessitate the longer appointment. The purpose of the legislature may be laudable, as the majority assumes. The important thing is that under the theory of the majority, the legislature had in mind, not any desire on the part of Mulholland to resign nor any act on his part that would constitute an abandonment of his office, but rather that he was doing something that was wrong, and that as a result he should be removed from office. Their intention to take from him his office by reason of the possible effect of his filing is clear, and to my mind the statute is one providing for removal, and it cannot by any sophistry or agile reasoning be made anything else. But if we grant that it is not a removal statute in the limited sense, is it within the power of the legislature to create the vacancy? The Constitution fixed the term for which Mulholland might hold his office, if he did not resign or abandon it, if he performed the duties of his office and if he was not guilty of the offenses defined in sections 17 and 18 of Article V. No other interpretation can be given to the constitutional provisions than this, or they are without effect. Term measures time it is true, but includes within it the idea that once a man is elected to a term, it is his right under the Constitution to hold it for that period, so long

as he does not die, become insane, does not voluntarily relinquish it by resignation or abandonment, and is not guilty of the misconduct specified in sections 17 and 18, supra. The Constitution specifies the wrongful acts which result in his loss of the right to hold the office for the term, and, as I have indicated, he may resign or abandon it, and the legislature and the courts may determine what abandonment or resignation is within certain limitations. The Constitution in effect says that so long as he performs the functions of his office, is not guilty of trespasses specified, and does not resign or abandon the office he may hold it for the term. It specifies the penalties which result in removal. The rule of construction universally accepted in this situation is expressed in 1 Cooley's Limitations, eighth edition, page 139, as follows:

"Another rule of construction is, that when the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases. On this ground it has been held by the supreme court of Maryland, that where the Constitution defines the qualifications of an officer, it is not in the power of the legislature to change or superadd to them, unless the power to do so is expressly or by necessary implication conferred by the Constitution itself. Other cases recognizing the same principal are referred to in the note."

Mechem on Public Offices and Officers, has this to say on page 254: "Where *the term of the officer* is fixed by the Constitution, the legislature can neither extend nor abridge it." And on page 290, Id.: "Where the Constitution provides that officers may be removed for a given cause, defining it in terms which have a definite and well understood legal meaning, it is not competent for the legislature to extend its scope by adding or incorporating offenses which do not fall within that meaning. The statement of one cause is an implied prohibition to the legislature's adding to it or extending it to other causes." And on page 297, Id.: "Where the tenure and term of office are fixed

by the Constitution, * * * such provisions of the Constitution are beyond the power of the legislature to alter or destroy.''

The legislature may not abridge the constitutional provisions as to term and tenure of office by enacting statutes which serve to take from the officer his office without his voluntary relinquishment of the office. Thus in *Lowe* v. *Commonwealth*, 3 Metc. (Ky.) 237, 241, the court was dealing with a statute which provided that under certain circumstances constitutional officers could be suspended from office. Their constitutional provisions as to term and removal are the same as ours. The court said: ''It seems to us that there can be but one view of this question, which is, that wherever the constitution has created an office and fixed its term, and has also declared upon what grounds and in what mode an incumbent of such office may be removed before the expiration of his term, it is beyond the power of the legislature to remove such officer or suspend him from office for any other reason or in any other mode than the Constitution itself has furnished.''

The effect of any statute which serves to take from the officer the right to hold the office for the full term without a voluntary giving up of the office must be a removal, as that is the only term which can reasonably be said to define proceedings whereby an officer is deprived of his office without voluntarily giving it up. So in New York an Act of the legislature provided that justices of the peace in certain townships where there were police magistrates, should not receive any fees for the service of legal papers. The effect of this was to deprive them of any pay for their services as justices of the peace. It was argued that the measure was an economy one, and not one which shortened their term, abolished the office or removed them from office. In disposing of the matter the New York court said, in *People* v. *Howland*, 155 N. Y. 270, 49 N. E. 775, 778, 41 L. R. A. 838: ''Is there any difference between abolishing an office altogether, and practically preventing the incumbent from discharging the functions thereof? 'Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision.' (*People ex*

*rel. Wood* v. *Draper,* 15 N. Y. [532], 543.) * * * *When the main purpose of a statute, or a part of a statute, is to evade the constitution by effecting indirectly that which cannot be done directly, the act is to that extent void, because it violates the spirit of the fundamental law."* (Italics supplied.)

To my mind it seems clear that if filing for another office does not show a voluntary resignation of the first office at the time of the filing for the second, it cannot be said to show conclusively the intention of the officer to relinquish the first voluntarily by a present or past abandonment and the element of a voluntary giving up of the office is not present. It is true that he does an act voluntarily, i. e., filling for the second office, but so, too, does the officer who collects illegal fees, or is guilty of some other misconduct or misfeasance, yet no one would say that the action, though voluntary, indicated a voluntary giving up of the office. That filing for the second office cannot be declared by the legislature to show resignation or the fact of abandonment, to my mind is clear, since under any definition of the terms it does not indicate the intent required.

The legislature may say when acts on the part of the incumbent show the conclusive and present intent to give up the office. Thus a voluntary resignation may be said by the legislature conclusively shows the intent of the office holder to give up the office, and they have so declared in section 511, Revised Codes. So, too, non-user of the office under certain circumstances shows the intent voluntarily to give up the office and the legislature may declare that it does. The test to be applied is not whether the particular act is voluntary, but rather does it show a voluntary giving up of the office in the present. That is, by his act has he indicated that he has voluntarily given up the office. Before the legislature can declare an act to be an abandonment of the office, it must appear that there has been a non-user of the office; there must be a showing that the incumbent is not performing the functions of his office or that the doing of the act, like accepting a second office, makes it impossible for him to perform the duties of the first office. These acts would show a voluntary relinquishment of the office by its abandonment.

Under the definition in Corpus Juris, supra, this must be true. But here no element of non-user of the office or of failure to perform the functions of the office appear. The incumbent is performing the duties of his office; he has not made it impossible by his filing for the second office to perform the functions of the first. His candidacy may result in his spending less time in the office than formerly, but that is true of other officeholders whose terms expire so that they do not come within Chapter 116, and who run for reelection to·their own office or for some other office. If the others so completely neglected their office that a non-user resulted, then, even without statutes, it might be. proven that there was an abandonment, but no one would say that their mere candidacy results in an abandonment. Chapter 116 expressly negatives that idea when it says they do not come within the provisions of the Act, and certainly the legislature does not presume to apply the Act to the officers coming within it so as to declare that their absence from their offices compaigning will ipso facto result in an abandonment, and at the same time say that officers performing the same duties and whose terms expire at some other time, do not abandon their offices by doing the same thing. The act of giving up the office must be voluntary, and the legislature may declare what acts conclusively show that, but it may not declare acts which manifestly do not show that voluntary relinquishment to be abandonment or resignation, or it circumvents the constitutional requirements as to removal. The mere declaration by a court or a legislature that white is black will not make it so, nor will a declaration that an act which is not a voluntary relinquishment make it a voluntary one.

If the act of filing, then, may not be said to be proof of the voluntary resignation of the office, the loss of the office as provided in Chapter 116 is involuntary and the effect of the Act is to provide for the officer's removal in ways other than those provided for in the Constitution.

The legislature was clearly of the opinion that the result of the Act was to remove him as is apparent by the very clear language of the statute. It may be said in addition to what has· heretofore been said of the language of the Chapter, that had

the legislature intended to make the act of filing for the second office a resignation of the first, it would have been very simple to provide that it should be, by a simple statement something like this: "If the enumerated officers shall file for a second office, their filing for the second office shall constitute a resignation from their first office and it shall ipso facto become vacant."

To show further the legislature's theory of the results of Chapter 116, the language found in section 4 of the Act, "This act shall be construed as a condition subsequent to the tenure or holding of any office," etc., is significant. This language negatives the theory advanced by the majority that the Act merely provides that certain acts shall show conclusively the voluntary relinquishment of the office. The words "condition subsequent" contemplate a voluntary act, but the result of the voluntary act or omission, under any definition of a "condition subsequent," does not result in a voluntary giving up of the right, but rather a loss of the right as a penalty for not meeting the condition.

It certainly cannot be said that the language found at the end of section 1 of the Act is consistent with the theory of resignation or abandonment. That language is "and said vacancy shall become operative to *deprive* [Italics supplied] any person of the emoluments of any office, position, employment or place then held," etc. This provision would not be necessary if it could be said that the incumbent had resigned or abandoned the office, as certainly then he would not be entitled, without a statutory provision, to any of the emoluments of the office. The language is only consistent with the idea of removal.

To sum the matter up, then, it seems to me that there are but two ways by which an incumbent can lose his office before his term is up: the first by a voluntary giving up of the office, which includes resignation or abandonment as they have been herein discussed; and the other by an involuntary giving up of the office, which is removal. The subject is covered by the Constitution, and the legislature may not add to or abridge the provisions as to it. This Act is manifestly a removal statute. It was so written by the legislature and it was so intended. It

578

adds other grounds for removal than those provided by either section 17 or 18 of Article V, and it is for that reason unconstitutional.