238 So.2d 401 (1970)
Charles R. HOLLEY, Appellant,
v.
Tom ADAMS, As Secretary of the State of Florida, and the State of Florida, Appellees.
No. 39816.
Supreme Court of Florida.
June 26, 1970.
*403 James G. Mahorner, of Dickens, Graham, Miller, Mahorner & Linn, Tallahassee, for appellant.
Earl Faircloth, Atty. Gen., T.T. Turnbull, and Ronald W. Sabo, Asst. Attys. Gen., for appellees.
Martin D. Kahn, of Kahn & Clein, N. Miami, for Elton J. Gissendanner, amicus curiae.
ADKINS, Justice.
This is an appeal from a final judgment rendered by the Circuit Court of the Second Judicial Circuit in Leon County, Florida, directly passing upon the validity of Ch. 70-80, Laws of Florida, amending § 99.012, Fla. Stat., F.S.A. We have jurisdiction. Art. V, § 4(2).
The appellant, hereinafter referred to as Holley, is currently a Circuit Court Judge and the term of his office does not expire until January of 1973. He intends to qualify for the office of Justice of the Supreme Court of Florida, but is faced with the following provisions of Ch. 70-80, Laws of Florida:
"(2) No individual may qualify as a candidate for public office who holds another elective or appointive office, whether state, county or municipal, the term of which or any part thereof runs concurrent to the term of office for which he seeks to qualify without resigning from such office not less than ten (10) days prior to the first day of qualifying for the office he intends to seek. Said resignation shall be effective not later than the date upon which he would assume office, if elected to the office to which he seeks to qualify, or the expiration date of the term of the office which he presently holds, or the general election day at which his successor is elected, whichever occurs earlier. With regard to elective offices said resignation shall create a vacancy in said office thereby permitting persons to qualify as candidates for nomination and election to that office, in the same manner as if the term of such public officer were otherwise scheduled to expire; or, in regard to elective municipal or home rule charter county offices, said resignation shall create a vacancy which may be filled for the unexpired term of the resigned officer in such manner as provided in the municipal or county charter. This does not apply to political party offices.
"(3) Any incumbent public officer whose term of office or any part thereof runs concurrent to the term of office for which he seeks to qualify and who desires to resign his office pursuant to the provisions of this act shall execute an instrument in writing directed to the governor irrevocably resigning from the office he currently occupies. The resignation shall be presented to the governor with a copy to the department of state. The resignation shall become effective and shall have the effect of creating a vacancy in office as provided herein, and the public officer shall continue to serve until his successor is elected or the vacancy otherwise filled as provided above in subsection (2).
"(4) Nothing contained in this act shall relate to persons holding any federal office."
Not wishing to resign his present office unless he is successful in his quest for the office of Justice of the Supreme Court, Holley brought a declaratory action against Tom Adams, as Secretary of the State of Florida, and the State of Florida. In his complaint, Holley alleges that he "intends, and has publicly announced, he intends, this year to be a Republican candidate for nomination and election to the office of Justice of the Supreme Court of Florida." He further alleges that, although he has complied with all other requirements of law, the Secretary of State has informed Holley that unless he submits *404 an irrevocable resignation from his office of Circuit Judge ten (10) days before the first date of qualifying (the resignation filing date being June 27, 1970) that the Secretary will reject his qualification papers for the office of Justice of the Supreme Court. In his complaint, Holley attacked the constitutionality of Ch. 70-80. The lower court held that it had jurisdiction and then sustained the provisions of Ch. 70-80, Laws of Florida, as not violating the provisions of the Florida Constitution or of the United States Constitution.
This appeal resulted and the cause has been accelerated so as to make possible the rendition of a decision prior to the June 27, 1970 deadline for submission of the resignation.
The appellees maintain that Holley only seeks advice as to his future action and is not entitled to relief under the decision in Bryant v. Gray, 70 So.2d 581 (Fla. 1954). The Bryant case, a suit for declaratory decree, sought a construction of the constitutional provision declaring the Governor ineligible for re-election for the next succeeding term. It was alleged that plaintiff Bryant desired to be a candidate and might be a candidate for the next succeeding term. He was not sure. The question was therefore hypothetical and too remote as to time and too uncertain as to contingencies to warrant declaratory relief.
In the case sub judice, Holley alleges that he intends to be a candidate and has publicly announced his intention to be a candidate. He has filed with the Secretary of State a declaration of such intention, designation of campaign treasurer and campaign fund and depository collection, deposit and disbursement of campaign funds. These circumstances call into play the principle announced in James v. Golson, 92 So.2d 180 (Fla. 1957), which held that under the provisions of § 86.011(2) (formerly § 87.01(2), Fla. Stat., F.S.A., the Court may render a declaratory judgment,
"Of any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege or right now exists or will arise in the future. Any person seeking a declaratory judgment may also demand additional, alternative, coercive, subsequent or supplemental relief in the same action."
the fact that a controversy had not matured is not always essential.
The action for declaratory judgment was appropriate and the Circuit Court had jurisdiction.
Holley contends that Ch. 70-80, Laws of Florida, is invalid as a legislative attempt to prescribe qualifications of eligibility to a constitutional public office, the qualifications for which are prescribed by the Florida Constitution. In considering this contention, the distinction between eligibility for office and qualifications or conditions imposed upon an office seeker should be kept clear.
In determining the validity of the statute certain basic principles of constitutional construction must be followed.
First, it is the function of the Court to interpret the law, not to legislate.
Second, courts are not concerned with the mere wisdom of the policy of the legislation, so long as such legislation squares with the Constitution.
Third, the courts have no power to strike down an act of the Legislature unless the provisions of the act, or some of them, clearly violate some express or implied inhibition of the Constitution.
Fourth, every reasonable doubt must be indulged in favor of the act. If it can be rationally interpreted to harmonize with the Constitution, it is the duty of the Court to adopt that construction and sustain the act.

*405 Fifth, to the extent, however, that such an act violates expressly or clearly implied mandates of the Constitution, the act must fall, not merely because the courts so decree, but because of the dominant force of the Constitution, an authority superior to both the Legislature and the Judiciary. Amos v. Mathews, 99 Fla. 1, 126 So. 308 (1930).
The judiciary will not nullify legislative acts merely on grounds of the policy and wisdom of such act, no matter how unwise or unpolitic they might be, so long as there is no plain violation of the Constitution. Jackson Lumber Company v. Walton Company, 95 Fla. 632, 116 So. 771 (Fla. 1928). See also Williams v. City of Jacksonville, 118 Fla. 671, 160 So. 15 (1935).
Holley relies upon Burroughs v. Lyles, 142 Tex. 704, 181 S.W.2d 570 (1944), where the Court considered a statute requiring resignation by any executive or administrative officers before running for another office. The Texas Supreme Court held that the statute was unconstitutional as attempting to impose an additional qualification beyond that required by the Constitution.
On the other hand, the appellees rely upon Mulholland v. Ayers, 109 Mont. 558, 99 P.2d 234 (1940), which also involved a resignation statute substantially similar to the one at issue in the case sub judice. The Court upheld the statute as being constitutional, saying,
"A person may possess the requisite qualifications or may be eligible to many different offices. The legal requirement, however, that he may not hold more than one at a time does not affect his eligibility to hold them all. On the other hand, the requirement that an office held by one who becomes a candidate for another becomes vacated goes not to his eligibility to hold either office." (p. 239)
Decisions in other jurisdictions concerning this question are in conflict, so it is necessary to determine the rule which would be applicable in this jurisdiction in the light of our previous decisions.
In Webster's Third New International Dictionary, the word "eligible" is defined as "fitted or qualified to be chosen or used." The word "qualified" is defined as "fitted (as by endowments or accomplishments) for a given purpose: competent, fit."
The word "eligible," when used in speaking of a candidate for office as being eligible, means capable of being chosen, while qualified means the performance of the acts which the person chosen is required to perform before he can enter into office. See Bradley v. Clark, 133 Cal. 196, 65 P. 395 (1901).
Holley relies upon Thomas v. State ex rel. Cobb, 58 So.2d 173 (Fla. 1952), where a statute requiring candidates for the office of county superintendent of public instruction to have a valid Florida Graduate Teacher's Certificate was held to be unconstitutional in that it added qualifications to the office so as to make such qualifications different from those prescribed in the Constitution. The requirement of the Florida Graduate Teacher's Certificate was clearly a qualification for office and quite different from a statute pertaining to eligibility as a candidate for election. The requirement in the Thomas case related to the academic, professional, or mental requirements as a qualification for holding the office. Ch. 70-80 is not a legislative determination that a person who currently holds the office of Circuit Judge is not fit to be a Supreme Court Justice.
State ex rel. Fair v. Adams, 139 So.2d 879 (Fla. 1962), involved the question of whether an office seeker could run for two offices at the same time. This Court conceded that there was no constitutional or statutory prohibition in Florida against running for several offices at the same time. The Court pointed out that an office *406 holder may become a candidate for another office if the term of that office begins before the term of the office which he holds expires. He would have to resign his present office before entering upon the duties of the office to which he might be elected. The Court held a candidate could not seek the nomination to several state offices at the same time, even though there was no constitutional or statutory provision.
Jones v. Board of Control, 131 So.2d 713 (Fla. 1961), was an action by a former faculty member of a state university for alleged breach of contract in terminating his employment on the ground that he had breached a rule in filing as a candidate for a judgeship. The Court held that a rule prohibiting university employees from seeking election to public office was constitutional. The Court in its opinion said:
"We think that we can dispose of our problem on a much broader plateau of reasoning with the view that any right which an individual does have to work for the government or to continue in the public employ or to seek public office must necessarily be subject to all reasonable rules and regulations promulgated by the government in the interest of the public and for the well-being of the public services." (Emphasis supplied) (p. 717)
"* * *
"We think that the decision of the trial judge and our own conclusion is clearly supported by the opinion of the Supreme Court of the United States in United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. There, the highest Court sustained the constitutionality of the so-called Hatch Act, 18 U.S.C.A. § 594 et seq., 5 U.S.C.A. § 118i et seq. which prohibited government employees in the Civil Service from seeking election to public office. We think it unnecessary to elaborate upon the details of that decision. It is perfectly clear that the United States Supreme Court found adequate justification for a requirement which would preclude participation in political campaigns in the interest of saving the employees against political retaliation and providing job security." (p. 718)
Ch. 70-80 does not prescribe additional qualifications for the office, as the candidate may well be qualified in a legal sense to hold either. The law is simply a limitation upon the right to retain the office already held when seeking another. It is not a limitation upon the right to seek another office, for the incumbent of an office has the choice under the statute to retain it unmolested or give it up and seek another. See Mulholland v. Ayers, supra.
This holding is not in conflict with Wilson v. Newell, 223 So.2d 734 (Fla. 1969), where a statute, requiring a candidate for county commissioner or county school board to have been a bona fide resident of the district from which he qualified for a period of at least six (6) months prior to the qualifying date, was held unconstitutional. This statute required additional "qualifications" for the office. Ch. 70-80 does not prescribe qualification but relates to the eligibility of those who may become candidates.
Holley also says that Ch. 70-80 must be given prospective application only and should not apply to those office holders who obtain their offices at a time when it was unburdened by the provisions.
The right to seek public office is not a constitutional absolute, but such privilege is subject to reasonable restraint and conditions. Jones v. Board of Control, supra. Ch. 70-80 is not a burden imposed upon the office of circuit judge presently held by Holley. His term of office as circuit judge remains as before and this right is affected only by the voluntary act of the incumbent in office.
*407 The acceptance of an incompatible office by one already holding office operates as a resignation of the first. In the absence of Ch. 70-80, Holley would have been required to resign as circuit judge in the event he were elected and assumed the duties of a Justice of the Supreme Court. See State ex rel. Fair v. Adams, supra. Ch. 70-80 simply extends the rule of resignation or abandonment of office to those who become candidates for another office when they already hold one office, the term of which or any part thereof runs concurrent to the term of office for which he seeks to qualify. Certainly, a person will be held to have abandoned his office when he leaves the state or changes his residence from the territorial jurisdiction of the office. Similarly, there is no constitutional provision prohibiting the Legislature from declaring that the mere filing for a second office by the holder of one office under the circumstances covered by Ch. 70-80 operates as an abandonment of the first. Mulholland v. Ayers, supra.
Holley contends that under State ex rel. Hatton v. Joughin, 103 Fla. 877, 138 So. 392 (1931) and State ex rel. Holland v. Ledwith, 14 Fla. 220 (1872), although the rights of the office may be restricted prior to its terms, an office holder upon election receives a property interest in the office, which interest is protected against reduction by the Legislature. This principle is not applicable, because the reduction of the term, if any, is caused solely by the act of the office holder in abandoning the office which he presently holds. This is particularly true under the principle announced in Jones v. Board of Control, supra, that the privilege of seeking public office is subject to reasonable restraint and conditions.
The statute does not violate the appointive powers of the Governor. With regard to elective offices the resignation is effective not later than the date upon which he would assume office, if elected to the office to which he seeks to qualify, or the expiration date of the term of the office which he presently holds, or the general election day at which his successor is elected, whichever occurs earlier. With regard to elective offices the resignation creates a vacancy in the office thereby permitting persons to qualify as candidates for nomination and election in the same manner as if the terms of such public offices were otherwise scheduled to expire. The vacancy would occur as of the effective date of the resignation and, in the event no one qualified for election to the office, the vacancy would then be filled by the Governor.
Ch. 70-80 contains the following statement of legislative intent:
"WHEREAS, it is generally agreed to be considered inequitable to permit an elected official or appointive official holding office to use the prestige and power of that office in seeking election to a higher or different office, and
"WHEREAS, it is generally agreed that by providing for prospective resignations the people of the State of Florida would not be compelled to bear unnecessary cost of special elections occasioned by elected or appointed officials who, while holding one office, seek and obtain another elective office."
Police power is the sovereign right of the State to enact laws for the protection of lives, health, morals, comfort and general welfare. State ex rel. Municipal Bond and Inv. Co., Inc. v. Knott, 114 Fla. 120, 154 So. 143 (1934). The State may enact laws whenever demanded by public interest, and large discretion is vested in the Legislature to determine public interest and measures for its protection. Scarborough v. Newsome, 150 Fla. 220, 7 So.2d 321 (1942).
Ch. 70-80 was enacted for the benefit of the public welfare as stated in the above-quoted clauses. The statute fulfills its purposes.
Holley is not in a position to assert the constitutional right of a notary public or *408 military officer to simultaneously hold another office, nor the right of a Legislator to hold judicial office, nor the question of whether the statute places an undue qualification on a federal officer.
Elton J. Gissendanner, Mayor of the City of North Miami, has filed a petition to intervene or in the alternative to appear as amicus curiae. The petition raises issues collateral to those under consideration and intervention should not be allowed. See Dickinson v. Segal, 219 So.2d 435 (Fla. 1969). However, the brief filed on behalf of Mr. Gissendanner has been treated as that of an amicus curiae.
In summary, Ch. 70-80 does not relate to the qualifications one must possess in order to hold office, but merely conditions under which he may become eligible to be a candidate. The Legislature, in its wisdom, considered it inequitable for an elected official or appointive official holding office to use the prestige and power of that office in seeking election to a higher or different office. Furthermore, the Legislature agreed that by providing for prospective resignations the people of the State of Florida would not be compelled to bear the unnecessary cost of special elections occasioned by elected or appointed officials who, while holding one office, seek and obtain another elective office.
To construe the provisions of Ch. 70-80 as imposing additional qualifications upon the office of Justice of the Supreme Court or any other office would be to legislate and not to interpret. The objections made to the law are matters of legislative concern.
The judgment of the Circuit Court is
Affirmed.
DREW, CARLTON and BOYD, JJ., and MASON, Circuit Judge, concur.
THORNAL, J., concurs with opinion.
ERVIN, C.J., dissents with opinion.
THORNAL, Justice (concurring).
I concur in the opinion and judgment prepared by Justice ADKINS. In doing so, however, I deem it appropriate to note that we do not here deal with a legislative encroachment on a vested or contractual right of an officeholder. Gay v. Whitehurst, 44 So.2d 430 (Fla. 1950); Greene v. Gray, 87 So.2d 504 (Fla. 1956); 1956 Op. Atty.Gen. 056-238, August 13, 1956; City of Jacksonville v. State, 151 So.2d 430 (Fla. 1963). As the opinion emphasizes, the elements of eligibility to seek an office are not vested rights constitutionally protected. This is the aspect of the instant statute which distinguishes it from an enactment which would impinge on contractual or vested rights.
DREW, CARLTON and ADKINS, JJ., and MASON, Circuit Judge, concur.
ERVIN, Chief Justice (dissenting).
Section 13A of Article V of the State Constitution sets forth all of the eligibility requirements or qualifications provided by the Constitution for the office of a Justice of the Supreme Court. Section 4, Article VI of the State Constitution sets forth all of the constitutional disqualifications to hold public office; that is, that no person convicted of a felony or adjudicated to be mentally incompetent shall be qualified to hold office until restoration of his civil rights or removal of his disability has occurred. Section 5 of Article II of the State Constitution provides no person shall hold at the same time more than one office under the government of the state and the counties and the municipalities, except a notary public or military officer. Section 1(f) of Article IV of the State Constitution provides that except as otherwise provided in the Constitution the governor shall fill by appointment any vacancy in state or county office for the remainder of *409 the term of an appointive office, and for the remainder of the term of an elective office if less than twenty-eight months; otherwise, until the first Tuesday after the first Monday in January following the next general election. Section 14, Article V of the State Constitution provides that judicial vacancies shall be filled by appointment or election for the unexpired term.
It appears to me Chapter 70-80, the "resign-to-run" act, imposes a disqualification in addition to those set forth in the above-related constitutional prohibitions and thus collides with the constitutional maxim that the Legislature may not impose or prescribe qualifications or disqualifications of eligibility to a constitutional public office in addition to those set out in the basic document itself.
There was a time when the Constitution forbade a bank officer being elected governor (Const. 1838, Sec. 3, Art. VI), and forbade a minister of the gospel serving in the Legislature or as governor (Const. 1838, Sec. 10, Art. VI). These prohibitions were clearly expressed in the Constitution. They were later removed by vote of the people, and the only qualifications and disqualifications in the present Constitution are those I have referred to above.
But now Chapter 70-80 in effect statutorily prohibits (with certain glaring exceptions) many current public officers, including Judge Holley, from eligibility to seek or hold the office of Justice of the Supreme Court or other public office unless they first shed their current offices. Similarly as a person who is a convicted felon or who has been adjudged mentally incompetent, Judge Holley must remove his disability of holding office as a Circuit Judge before he will even be able to seek election as a Justice of the Supreme Court. In this respect, the fact that Judge Holley has the power and ability to alter eo instante his present status by resigning his state office so as to conform to the condition imposed by the statute cannot operate to preserve as constitutional the qualifications impact of Chapter 70-80. The same could be said of a bank officer or minister of the gospel under the bygone provisions above cited; yet, curiously, such provisions were not creations of legislative wisdom but were set forth in the Constitution itself.
In Thomas v. State, Fla. 1952, 58 So.2d 173, this Court, after first referring to constitutional qualifications and disqualifications to hold public office similar to those referred to above, said:
"* * * This solemn declaration in our Constitution about qualifications or disqualifications to hold public office are conclusive of the whole matter whether in the affirmative or in the negative form. * * *" (Thomas v. State, supra, at 183. Emphasis supplied.)
Chapter 70-80 is in no sense a corrupt practices act relating to the purity of the ballot or regulating campaign practices. See Maloney v. Kirk, Fla., 212 So.2d 609, text 616. It simply sets up a status oriented disqualification to seek election to a public office so long as one is holder of another public office. It says "no individual may qualify" for a public office until he removes the disqualification of holding his current office. He must present his irrevocable resignation therefrom as an item of his qualifications papers to run for another office. He is disqualified by statute to seek another public office until he removes the disqualification. In effect, Chapter 70-80 is a legislatively imposed requirement affecting and conditioning the status of a person seeking to qualify for election to a particular public office and as such is contrary to the qualification and disqualification provisions spelled out with specificity in the Constitution; burdens the potential candidate with a disqualification not prescribed in the Constitution; deprives him of the same freedom enjoyed by other electors not otherwise prohibited by the Constitution from seeking election to a public office; and denies the electorate of the state or county the candidacies of those who are unwilling to shed their current offices in order to become candidates.
*410 A reading of the opinions in Maloney v. Kirk, supra, will further illustrate the invalidity of Chapter 70-80. Much of the opinion of Mr. Justice Roberts quoting Circuit Judge Hugh M. Taylor's opinion below is pertinent to an understanding of the reasons why additional qualifications or disqualifications other than those prescribed in the Constitution are impermissible. I disagreed to Mr. Justice Roberts' views there expressed because I did not consider the campaign spending law, which related to campaign contributions and spending and corrupt practices, as an enactment prescribing qualifications or disqualifications for the office of Governor other than those enumerated in the Constitution. Here, however, it is quite clear there is a statutory disqualification pertaining to the status of a seeker of public office which must be removed by irrevocable resignation as a part of his qualifying procedural compliance as a candidate for another public office. The instant enactment is not of the type which merely regulates the manner and mode of conduct which an otherwise eligible and qualified candidate must observe in seeking election to a particular office. What Justice Roberts said in Maloney v. Kirk definitely applies here.
Wilson v. Newell, Fla. 1969, 223 So.2d 734, is to the same effect. There, the statute required that for one to be a candidate for the office of county commissioner he "shall have been a bona fide resident of the district from which he qualifies for a period of at least six months prior to the qualifying date." This statute we held to be unconstitutional because "it prescribes qualifications for the office of County Commissioner in addition to those prescribed by the Constitution." (At 736. Emphasis added.)
It is sheer sophistry to say that there is a dichotomy here  that Chapter 70-80 only regulates the right to continue to hold a current office without relation to eligibility or qualification to seek and hold another. In the first place, the requirement of irrevocable resignation is made a condition precedent  a required item in complying with qualification regulations  to seeking another office. Just as in the Wilson case, one cannot become a candidate unless he first renders himself eligible by satisfying the condition precedent prescribed in Ch. 70-80.
But even if the statute only related to the right to continue to hold a current office, there are serious questions as to its validity. One cannot be legislated out of a constitutional office, for an unconstitutional reason although certain officers may be suspended for cause or impeached in other situations. But the right to continue to hold office under the Constitution cannot be made subject to coercive legislative forfeit merely because one seeks another office. There are certain quasi-property rights to hold a public office that are protected by the Constitution (see State, ex rel. Hatton v. Joughin, 103 Fla. 877, 138 So. 392) from legislative forfeit or reduction during the elective term and particularly is this true of the office of a circuit judge. See Sections 16 and 24, Article V, State Constitution.
Jones v. Board of Control, Fla. 1961, 131 So.2d 713, is altogether inapposite to the instant case. A public employee, not a public officer was involved. Requirement of a public employer or of a general law, e.g., Hatch Act, that a public employee refrain from becoming a political candidate in order to retain his job is quite dissimilar from a statute requiring public officers as a condition precedent to becoming candidates to resign their offices. The former is not a statutory requisite that must be complied with in order to qualify as a candidate. The sanction or penalty is loss of public employment, not deprivation of the right to be a candidate by state action.
State ex rel. Fair v. Adams, Fla. 1962, 139 So.2d 879, dealt with multiple candidacies of one individual for two public offices in the same election. The preclusion announced therein did not involve the right to run for a single office, but to run for *411 two at the same time. The Constitution excludes additional statutory qualifications or eligibility conditions affecting the right to seek or to hold a single office, but does not exclude statutes or rules of law prohibiting multiple candidacies of one individual, since such multiple candidacies appear to be contrary to the further constitutional provision against an individual occupying two public offices at the same time.
The incongruities of Chapter 70-80 are striking. It is argued the principal object of the act is to preclude a current officeholder candidate from capitalizing on the fact that if defeated he will still retain his current office  a fact that could influence support and campaign contributions from those who might seek favors or considerations from such public officer. This contention blandly overlooks that all candidates for re-election, including the Governor, are not subject to Chapter 70-80, nor are public officer candidates for other offices who hold over after the general election until their terms expire the following January. Exclusion of so large a group of public officer candidates from the "resign-to-run" law makes such claimed purposes quite dubious.
Time does not permit because of the urgency for disposition of this litigation prior to the period of qualification of candidacies to fully discuss other facets that render Chapter 70-80 suspect and questionable. For example, the apparent impinging impact of the act on the Governor's powers to fill vacancies in elective offices pursuant to Section 1(f), Article IV, State Constitution, is a highly suspect constitutional feature. Also, the act has many glaring discriminatory features in addition to impinging upon the public's right to have a full range of candidates, whether current officeholders or not. It will bring in its wake a number of situations that create uncertainties and confusion. The Florida Constitution, as the Federal Constitution has been so interpreted, should be the polestar guiding in this critical area of the right of Florida citizens to seek and to hold office in the state. Innovative legislation of this kind is a break from history and must be closely scrutinized in order to protect against untoward results out of harmony with inviolate constitutional guidelines.
Although the wisdom of legislative enactments as opposed to their constitutionality is not the focal point for judicial study, it appears to me the Legislature has fashioned this statute on a mere scintilla of evidence showing abuse in the premises. On the other hand, the offensive features of the statute predominate against the advantages flowing from elimination of the suspected evil. The statute unquestionably lays a burden on the officeholder who because of his experience seeks promotion to another office, and will tend to deny the electorate the opportunity to have a full cadre of candidates, representative of all sectors of the community and of differing philosophies. The discriminatory nature of the statute generates cause to suspect that it is class legislation contrary to express constitutional office-holding qualification provisions adopted by the people which as presently written do not indicate they frown on officeholders' candidacies for other offices than those they hold.
Regardless of the wisdom of the reasons which prompted the instant statute, the test of its constitutional survival does not lie in the wisdom of its remedial intendment but, rather, rests exclusively in the constitutional power of the Legislature to affect the premises in the manner implemented by this statute.
Suppose the Legislature enacted a statute reading: "No individual may qualify as a candidate for public office who is either a physician, banker, lawyer, bingo game or race track operator, or insurance agent, without first surrendering his right and entitlement to pursue and practice said profession or means of livelihood." Of course, this is only a hypothetical enactment and the Legislature no doubt will never find an evil, or cause or alarm sufficient to justify such a statute. However, I *412 am judicially concerned, not with the need or wisdom of such a hypothetical enactment, but with the constitutional power of the Legislature to enact such a statute based on the precedent rationale of the majority in this case. In terms of legislative constitutional powers, I wonder if my majority brethren would be receptive to the rationale that such provision escapes application of the constitutional maxim that the Legislature may not impose or prescribe qualifications of eligibility or ineligibility to a constitutional public office in addition to those set out in the Constitution.
When the people of this state through their Constitution have scrutinized citizens respecting their potentials to serve the public as officeholders, and decided who of them are deemed qualified to hold a designated public office, it is beyond the power of the Legislature to superimpose its own qualificatory scheme.
The majority in the instant case attempts to outflank a confrontation with the constitutional maxim precluding the Legislature from imposing its own devised qualification requirements. First, the majority, disregarding the Thomas and Wilson decisions, weaves a subtle distinction between the terms, "eligible" and "qualified," concluding that the dictionary meaning of the latter serves as the acid test for determining a violation of the above-cited constitutional maxim. Under the majority's announced reasoning, a public officeholder is personally qualified under the State Constitution to be elected to any other office, but he is eligible to be elected to such other office under the terms of the statute only if he resigns his status as a present officeholder. By the same token, under the hypothetical enactment posed hereinbefore, I assume the majority's reasoning would be: "A physician, banker, or lawyer is qualified as a person or citizen elector to seek election to a state office, but said person is eligible to be elected only if he surrenders his status as a physician, banker, or lawyer." I confess I am unable to understand this subtle distinction of the majority.
Secondly, the majority reasons that the present statute does not really indelibly affect the qualification status of an office seeker since in actuality it is the voluntary choice of the would-be office-seeker which activates the statutory prohibition. To test the soundness of this reasoning, it is imperative to explore the proverbial "other side of the coin."
Take the banker, physician, lawyer, example set out above. Under the workings of this hypothetical enactment the legislative edict says: "The decision to seek public office is a voluntary one, but if you do desire to seek office, you surrender by operation of law your status to function as a banker, physician, or lawyer." The Legislature's power to coerce a forfeiture of such a status as a condition to seeking public office is particularly obnoxious because it offends traditional principles and notations of the limited scope of power heretofore thought to be vested in a legislative body in adding qualifications to public office holding. However, when the Legislature says to an officeholder "Your decision to seek another public office, the term of which coincides with your present office, is a voluntary one; but in order to be eligible to seek such an office you must resign your present office," we may not be immediately offended by the ploy of power evidenced in such an enactment because of the anaesthetizing effect of the public policy claimed to be implemented (using the power and influence of incumbency in one office to promote one's candidacy for another office); an ingredient lacking in the former example. The same abuse of power is involved nevertheless. The Legislature has no more right to declare a contingent forfeiture of public office in the latter case than it does to declare a contingent forfeiture of the right to pursue the livelihoods of banking, medicine, or law. Indeed, in the case of the people's elected public servant, the means and mode of divestiture are exclusively designated in the *413 Constitution and beyond the power of the Legislature to alter. See discussion supra.
Beyond the issues of this case there looms as a spectre the troubling question whether state action in the form of constitutional prohibition can deny equality respecting the right of any citizen elector, whether a public officer or not, to seek and hold office unless there is a strong and compelling public interest to be served by such denial action.
Thus, in conclusion of the Holley matter, there is simply no route available to split the horns of the constitutional dilemma generated by the instant statute. This is as it should be, since the illusory dictionary escape depicted by the majority precedent can only lead to an excessive vesting of power in the Legislature to prescribe added qualifications or disqualifications on a citizen's right to seek and hold public office, and the right of the people to exclusively prescribe in their Constitution the only limitations on eligibility to hold public office.
In addition to the above comments, I find it necessary to address the Federal question which the majority today treats in State ex rel. Davis v. Adams. These remarks are included herein because of the interrelation of the subject matter and controlling principles, and in the interest of expediting this matter.
In the Davis case the majority has construed Chapter 70-80, Laws of Florida 1970, to encompass the situation where a state officeholder seeks to qualify for election to a federal office. This construction postures squarely the issue of whether said statute is unconstitutional as a matter of Federal law because it attempts to prescribe qualificatory requirements incident to seeking a Federal elective office in addition to those qualifications enumerated in the United States Constitution. Particularly, relator Davis challenges the constitutionality of the instant statute so far as it prescribes additional qualifications incident to the right to qualify for election to office as a member of the House of Representatives of the United States.
In the context of relator Davis' situation, Chapter 70-80 required Davis to resign his state office as a condition to becoming eligible to qualify as a candidate for the office of United States Representative. Without satisfying this condition, there is simply no way Davis can become a candidate for the Federal office. The statute does not say, at least under the construction adopted by the authorities, responsible for certifying Davis' candidacy, that if Mr. Davis seeks and does qualify for the Federal office, he thereby abandons and surrenders his state office. Rather, the statute as applied operates as a condition precedent to Davis' right to qualify for election to office as a member of the United States House of Representatives. Viewed in this light, I simply cannot visualize how the instant statute escapes a collision with the universal and timeworn rule[1] that a state legislature, indeed the Federal Congress, may not prescribe additions to the qualificatory requirements of election to the office of United States Representative as set forth in the Federal Constitution. See State ex rel. Eaton v. Schmahl, 140 Minn. 219, 167 N.W. 481 (1918); State ex rel. Chandler v. Howell, 104 Wash. 99, 175 P. 569 (1918); Stockton v. McFarland, 56 Ariz. 138, 106 P.2d 328 (1940); Ekwall v. Stadelman, 146 Or. 439, 30 P.2d 1037 (1934); State ex rel. Pickrell v. Senner, 92 Ariz. *414 243, 375 P.2d 728 (1962), and cases cited therein.[2]
In the Davis case, the statute operates as a condition precedent prohibition or qualification of the status of a person who desires to qualify for election to a Federal office. But even if the statute were construed to operate as a condition subsequent divestiture of Davis' present status as a state officeholder, upon the exercise of his right to qualify for election to a Federal office the constitutionality of the present statute would not be preserved, although the Federal question would be abated. In my foregoing discussion of the Holley situation, I attempted to point out that the Legislature cannot add to the means or mode by which a constitutional state officeholder can be divested of the title to that office. This subject is specifically circumscribed by our State Constitution and is simply beyond the power of the Legislature to alter. Cf. Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491.
Thus, under the challenge of relator Davis, the present statute is unconstitutional as a matter of Federal law to the extent it attempts to prescribe qualification status of persons seeking to qualify for election to a Federal office, the qualifications of which are enumerated in the U.S. Constitution. However, since Chapter 70-80, Laws of Florida 1970, has no severance provision, and since such a savings intendment cannot reasonably be implied from the purpose sought to be effected by this enactment, the invalidity of the act as it pertains to relator Davis' Federal challenge, should operate to invalidate the act in toto in and apart from the outcome of the State constitutional questions examined in Holley.
I agree with Mr. Justice Thornal that the issues here are wholly unaffected by any contractual or vested rights of an officeholder who seeks to be a candidate for another office. We are concerned solely with a citizen's right under the Constitution to seek to hold public office pursuant to the qualification and eligibility requirements of the Constitution without the added burden of any further limitations, conditions, or qualifications that may be prescribed by statute.
NOTES
[1] James Madison explained the operation and purpose of this rule when the Federal Constitution was under consideration for adoption:

"The qualifications of electors and elected are fundamental articles in a republican government, and ought to be fixed by the Constitution. If the legislature could regulate those of either, it can by degrees subvert the Constitution." 5 Elliot's Debates 404.
Later, Alexander Hamilton observed:
"The qualifications of persons who may choose or be chosen, as had been remarked upon another occasion, are defined and fixed in the Constitution and are unalterable by the legislature." The Federalist, LX.
[2] In State v. Senner, the Arizona Supreme Court observed:

"[2] This court found in Whitney v. Bolin [85 Ariz. 44, 330 P.2d 1003], supra, that A.R.S. § 38-296 as applied to a Superior Court Judge seeking the office of Supreme Court Justice, which is a state constitutionally created office, amounted to an additional qualification to those established by the state constitution. Furthermore, subsection A of the statute says `No incumbent * * * shall be eligible for nomination or election * * *.' Subsection C provided that upon resignation from the office the person shall not be prohibited `from qualifying as a candidate for another office.' We find this language to be a clear and unambiquous affirmation of qualification requirements for candidates to public office. To qualify for an office other than the one held the candidate must resign from his present position. It is no less clear in meaning then a provision which says that before a man can run for an office he must attain the age of twenty-five years.
"The Supreme Court of Delaware, faced with a statutory provision that no judicial officer, during his term nor within six months after its termination, may be a candidate for an elective office, found it added to the elective office to which the judicial officer had aspired a further and additional qualication to that specified in the Constitution, i.e., that such a candidate may not be a judicial officer at the time he aspires to the constitutionally created position. Buckingham v. State, 42 Del. 405, 35 A.2d 903."