466 S.E.2d 133

**Ted PHILYAW, Administrative Director of the Courts, Appellant**

**v.**

**Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County, the Board of Review of the West Virginia Department of Employment Security, and Joyce Purkey, Appellees.**

**No. 22866.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 1995.

Decided Dec. 7, 1995.

John M. Hedges, Byrne & Hedges, Morgantown, for Appellant.

Walt Auvil, Pyles & Auvil, Parkersburg, for Appellee Purkey.

RECHT, Justice:

We are asked to review the narrow question involving the entitlement of a judicial employee to unemployment compensation benefits when that employee is required to resign her employment after she chooses to become a candidate for the non-judicial office of clerk of the circuit court.

The Circuit Court of Kanawha County reversed the decision of the Board of Review of the West Virginia Department of Employment Security. The Board of Review had found that the employee's resignation was a voluntary act without good cause involving fault on the part of the employer which disqualified the employee from receiving unemployment compensation benefits. We agree with the Board of Review's legal analysis that the employee was disqualified from receiving unemployment compensation benefits and, therefore, reverse the decision of the Circuit Court of Kanawha County.

## I.

## FACTS

Joyce Purkey (hereinafter "claimant") was employed as the Magistrate Court Clerk for Wood County from December 1, 1976, through January 30, 1992. Magistrate court clerks (hereinafter "magistrate clerks") are employees of the West Virginia Supreme Court of Appeals (hereinafter "employer") by virtue of their appointment to that position by the circuit judge of the county in which the magistrate court is located. W.Va. Const. art. VIII, § 3;[1] W.Va.Code 50-1-8 (1991).[2]

The claimant decided to become a candidate for the office of Clerk of the Circuit Court of Wood County in the 1992 election. When the claimant made the decision to become a candidate for the circuit clerk position, she discussed her continued employment status as a magistrate clerk with one of the circuit judges in Wood County. Specifically, she inquired whether she could take a leave of absence during her election campaign. The circuit judge directed her to the employer's Administrative Director, Ted Philyaw, for a definitive response.

The claimant testified that the Administrative Director informed her that as a judicial employee, she could not be a candidate for a non-judicial office. The employer's position was expressed within a memorandum dated November 21, 1983, which mandates that a judicial employee cannot continue in that position once his or her candidacy for a non-judicial office becomes public knowledge. The memorandum also contained a legal analysis demonstrating the incompatibility of a judicial, compared to a non-judicial office. The claimant was referred to West Virginia Constitution article VIII, section 7, which prohibits a member of the judiciary from becoming a candidate for a non-judicial office, as well as the regulation which requires judicial employees to observe the same standards that apply to members of the judiciary. Judicial Code of Ethics Canon 3(B)(2) (1977).[3]

Finally, the Administrative Director informed the claimant that the office of clerk of the circuit court was not a judicial office and consequently, if she decided to continue her

1. W.Va. Const. art. VIII, § 3 provides, in pertinent part, that the West Virginia Supreme Court of Appeals "shall have general supervisory control over all intermediate appellate courts, circuit courts and magistrate courts. The chief justice shall be the administrative head of all the courts."

2. W.Va.Code 50-1-8 (1991) contains the protocols for the appointment of magistrate court clerks by a circuit judge.

3. The events in this case took place in 1992. At that time, the "Judicial Code of Ethics" was in place. Effective January 1, 1993, the Code was amended and is now entitled the "Code of Judicial Conduct." For purposes of this opinion, we will refer to the Code as it was formerly designated.

candidacy, she would be required to resign from her position as magistrate clerk.[4]

The claimant resigned effective January 31, 1992. She now contends that she is eligible and not disqualified from receiving unemployment compensation benefits. She argues that she was improperly forced to resign her position as magistrate clerk as a condition to the exercise of her right to seek public office, consequently she did not leave work "voluntarily without good cause involving fault on the part of the employer" within the meaning of W.Va.Code 21A-6-3(1) (1990).

## II.

## STANDARD OF REVIEW

Our standard of review of the decision of the Board of Review of the West Virginia Department of Employment Security is:

> The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*

Syllabus Point 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994); *see also* W.Va.Code 21A-7-21 (1943).

The circuit court reversed the Board of Review, concluding as a matter of law that the employer improperly forced the claimant to resign her position as magistrate clerk. The central issues in this appeal are (1) whether it is reasonable to require a judicial employee to resign upon becoming a candidate for a non-judicial office and (2) whether an employee's subsequent resignation is considered voluntary without good cause involving fault on the part of the employer for purposes of the unemployment compensation statute. The issues so framed are questions of law and our review is de novo.

## III.

## ANALYSIS

There is no dispute that the claimant resigned her position as magistrate clerk, however she maintains that a requirement that forces her to resign in order to run for a political office is unreasonable to the extent that her resignation was not voluntary within the meaning of the unemployment compensation laws. Stated another way, the claimant's position is that the employer was at fault in adopting a policy that requires a judicial employee to vacate an office once a decision to become a candidate for a non-judicial office becomes public.[5]

The employer responds that a judicial employee cannot maintain the impartiality required of judicial employment while at the same time doing what is elemental to a campaign for a non-judicial office. Stated another way, the employer's position is that the cornerstone of the resign-to-run requirement is that the contours of the judicial function make it inappropriate to conduct the type of campaign typical of a non-judicial race.

A resolution of these competing positions requires an analysis of the resign-to-run requirement of a judicial employee and a determination as to whether such a condition of judicial employment is reasonable. If it is a reasonable requirement, then the claimant's resignation was voluntary without fault involving the employer constituting a disqualification for unemployment compensation benefits.

4. The Administrative Director based his conclusion that the office of clerk of the circuit court is not a "judicial office" as that term is used within W.Va. Const. art. VIII, § 7, on the decision of this Court in *Feltz v. Crabtree,* 179 W.Va. 524, 370 S.E.2d 619 (1988). We held in *Feltz* that the office of clerk of the circuit court is not a "judicial officer" since the clerk does not exercise judicial power and is not the kind of judicial officer contemplated by the West Virginia Constitution. *Feltz v. Crabtree,* 179 W.Va. 524, 370 S.E.2d 619 (1988).

5. The requirement that a judicial employee resign a judicial position if that employee chooses to become a candidate for a non-judicial office is informally known as a "resign-to-run" requirement. *See Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982).

IV.

IS THE RESIGN-TO-RUN REQUIREMENT A REASONABLE CONDITION OF JUDICIAL EMPLOYMENT?

West Virginia Constitution article VIII is devoted entirely to the powers and function of the judicial branch of government. Since the powers and functions, and indeed the entire structure, of the judicial branch are unique and unlike any other department of government, the rules regulating those powers and functions must, of necessity, be adapted to recognize those differences. The very soul of the judicial branch of government is that on a systemic basis, the judiciary must maintain both actual and perceived impartiality:

> It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community.... After securing wisdom and impartiality in their judgments, it is of great importance that the courts should be free from reproach or the suspicion of unfairness.

*See Forest Coal Co. v. Doolittle,* 54 W.Va. 210, 227, 46 S.E. 238, 245 (1903) (emphasis omitted) (quoting with approval *Oakley v. Aspinwall,* 3 N.Y. 547, 552 (1850).

Justice Frankfurter, dissenting in *Baker v. Carr,* may have said it best, "[t]he Court's authority—possessed of neither the purse nor the sword—ultimately rests on sustained public confidence in its moral sanction." *Baker v. Carr,* 369 U.S. 186, 267, 82 S.Ct. 691, 737–38, 7 L.Ed.2d 663 (1962). This moral sanction, which is the underpinning of the public confidence in our judicial system is at the heart of West Virginia Constitution article VIII, section 7, which provides, in pertinent part:

> No justice, judge or magistrate shall hold any other office, or accept any appointment or public trust, under this or any other government; nor shall he become a candidate for any elective public office or nomination thereto except a judicial office; and the violation of any of these provisions shall vacate his judicial office....

Similarly, Canon 7(A)(3) of the Judicial Code of Ethics provides:

> *A judge should resign his office when he becomes a candidate either in a party primary or in a general election for a non-judicial office,* except that he may continue to hold his judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention, if he is otherwise permitted by law to do so.

Judicial Code of Ethics Canon 7(A)(3) (1977) (emphasis added).[6]

Clearly, under both the constitutional provision and the Judicial Code of Ethics, a judicial officer must resign that office upon becoming a candidate for office unless that office is a judicial office.

It is not difficult to understand why a justice, judge or magistrate who chooses to become a candidate for a non-judicial office cannot continue in that office once there is a comparison of the boundaries of expression permitted during a campaign for a judicial, contrasted with a non-judicial, office.

The Judicial Code of Ethics, which is designed to establish the standards of ethical conduct of a judge, is unforgiving in its demand that a candidate for a judicial office cannot make any pledges or promises other than the faithful and impartial performance of the duties of the office.[7] Conversely, a candidate for a non-judicial office is not encumbered by any restrictions on pledges or promises of what that candidate would do if elected in regard to both issues and personnel matters.

6. Canon 5(A)(2) (1993) superseded Canon 7(A)(3) (1977) and states, "[a] judge shall resign from judicial office upon becoming a candidate for a non-judicial office either in a primary or in a general election...." Code of Judicial Conduct Canon 5(A)(2) (1993).

7. The Judicial Code of Ethics Canon 7(B)(1)(c) (1977) provides that a candidate "should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position, or other fact."

This, then, establishes the real conflict that the State is attempting to avoid when it forbids a judicial officer to remain in that office while a candidate for a non-judicial position, because the promises and pledges made as part of the non-judicial campaign might affect, or more significantly, appear to affect post-election conduct of a judicial employee who returns to that position following an electoral defeat. The best analysis of why a judicial employee should resign when he or she chooses to stand for election to a non-judicial position is contained in *Morial v. Judiciary Commission,* 565 F.2d 295 (5th Cir.1977), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). In *Morial,* the court was concerned with the constitutionality of a Louisiana statute and a Canon of Judicial Conduct identical to that of West Virginia, which required judicial officers to resign their positions before announcing candidacy for a non-judicial office. In upholding an attack on the statute and the Canon under both First and Fourteenth Amendment challenges, the court captured the essence of the distinction between a judicial and non-judicial political campaign by recognizing that:

> By requiring resignation of any judge who seeks a non-judicial office and leaving campaign conduct unfettered by the restrictions which would be applicable to a sitting judge, [the State] has drawn a line which protects the state's interests in judicial integrity without sacrificing the equally important interests in robust campaigns for elective office in the executive or legislative branches of government.

*Morial,* 565 F.2d at 305.

Now understanding why a justice, judge or magistrate should be compelled to resign when seeking a non-judicial position, it is not a quantum leap to apply the same rationale to a judicial employee such as a magistrate clerk.

We look first to Canon 3(B)(2) of the Judicial Code of Ethics which applies the same standards of fidelity to the concept of impartiality that are imposed upon judicial officers to judicial employees. Judicial Code of Ethics Canon 3(B)(2) (1977). This Canon recognizes a reasonable extension of the resign-to-run requirement constitutionally imposed upon justices, judges and magistrates to judicial employees.

Justices, judges and magistrates do not work in a vacuum, and judicial employees are essential in protecting and promoting the judicial function as well as the independence, impartiality, and public confidence in the court system. If a judicial employee becomes a candidate for a non-judicial office, the conflict of interest is no less obvious than with justices, judges and magistrates. Employees have access to files and would be exposed to political pressure, the same as the justices, judges and magistrates, leaving the integrity of the judicial system in question. Employees of the judiciary are in the same sensitive positions as judicial officers, requiring independence and impartiality.

Allowing employees to work within a judicial context while being a candidate for a non-judicial office creates an obvious appearance of impropriety, identical to that of justices, judges and magistrates. Ensuring the impartiality of court employees, protecting the integrity and appearance of impartiality of court offices, and preserving the division of powers set out in West Virginia Constitution article V, section 1, are legitimate public objectives and the pursuit of those objectives through the Judicial Canons are reasonable. *See LaBarge v. Chief Admin. Justice of the Trial Court,* 402 Mass. 462, 524 N.E.2d 59 (1988). We conclude that it is reasonable to extend the constitutional resign-to-run requirement for justices, judges and magistrates to judicial employees.

The circuit court, in reversing the Board of Review interpreted the resign-to-run requirement as an unconstitutional qualification for candidates seeking office under *Marra v. Zink,* 163 W.Va. 400, 256 S.E.2d 581 (1979) (declaring unconstitutional a city charter which required candidates for city council to be city residents for one year as an additional qualification for a municipal office, under W.Va. Const. art. IV, § 4). We believe that the circuit court's reliance on *Marra* is misplaced since the resign-to-run rule does not impose an additional qualification on a candidate. The employer did not alter the *qualifications necessary to run for office,* but rather established *requirements for retaining*

*employment.* The claimant's employment was conditioned upon a reasonable restriction, which because of the unique nature of the employment would not be imposed on employees in the private sector. This extension of the resign-to-run requirement to judicial employees is designed as a prophylactic measure to protect the entire judicial branch. This rule is a legitimate and independent condition of claimant's continued employment with the Judiciary. We hold the restriction on judicial employees requiring their resignation upon becoming a candidate for a non-judicial office is reasonable.[8]

V.

CLAIMANT'S VOLUNTARY TERMINATION OF EMPLOYMENT WITHOUT FAULT ON PART OF EMPLOYER

Having established that the resign-to-run requirement is a reasonable condition of employment, how does that resignation mandated by that requirement impact upon a judicial employee's right to obtain unemployment compensation benefits?

The claimant argues that her resignation was not voluntary. W.Va.Code 21A-6-3(1) (1990) provides that if an employee voluntarily quits, then the employee is indefinitely disqualified for unemployment compensation benefits unless that employee's reason for voluntarily quitting was for good cause involving fault on the part of the employer. The claimant contends that while she voluntarily quit, the reason for her quitting was that she was required to choose between continuing in her judicial position or becoming a candidate for circuit clerk. Therefore, she should not be disqualified from receiving unemployment compensation benefits because there was fault on the part of the employer in terms of improperly requiring the claimant to effect this "Hobson's choice." [9]

The claimant's argument must fail because she had the opportunity to choose between running for elective office or retaining her employment. The limitation on the claimant was a constraint on her employment as a result of a reasonable condition of employment and not on her right to seek elective office.

The claimant places significant reliance on our opinion in *Rhodes v. Rutledge,* 174 W.Va. 486, 327 S.E.2d 466 (1985) in order to support her qualification for unemployment compensation benefits. In *Rhodes,* the employee worked in a civilian position at a military base where her husband was stationed. Upon her husband's discharge from military duty, the employee was considered ineligible to retain her position because a condition of employment was that her husband must remain on active duty in military service. Upon moving to West Virginia, the employee applied for unemployment compensation benefits. We held that because the employee became ineligible for her employment as a result of her husband's loss of military status, she did not voluntarily resign. We recognized that when the employee's husband was discharged from military service, the employee had no choice but to leave her employment. We held that "a voluntary quit is defined as encompassing 'the free exercise of the will.' " *Rhodes,* 174 W.Va. at 488, 327 S.E.2d at 468 (quoting *State v. Hix,* 132 W.Va. 516, 522, 54 S.E.2d 198, 201 (1949)).

We can easily distinguish *Rhodes* from the case *sub judice* because the claimant's judi-

8. This conclusion is consistent with cases decided by the United States Supreme Court considering resign-to-run requirements. *See, e.g., Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (upholding a "resign-to-run" provision, which required public employees to resign their positions with state government before running for a political office); *United States Civil Serv. Comm'n v. National Assoc. of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (superseded by statute as stated in *Bauers v. Cornett,* 865 F.2d 1517 (8th Cir.1989) (finding constitutional the requirement that federal employees could not take an active part in political management, including becoming a candidate for an elective public office)); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (upholding a state statute requiring resignation from a classified service employee who becomes a candidate for nomination or election to any paid public office).

9. A Hobson's choice is "the choice of taking either that which is offered or nothing; the absence of a real alternative." *The Random House Dictionary of the English Language* 909 (2nd ed. 1987).

cial position was always available to her. She held her destiny in her own hands. The claimant triggered the disqualifying event by freely choosing to run for a non-judicial office. In contrast, no matter what the employee in *Rhodes* did, she was not eligible for her position once her husband resigned from military service. Here the claimant exercised her free will and voluntarily decided to become a candidate for a non-judicial office, thereby terminating her employment.

We hold that the decision on the part of the claimant to become a candidate in an election for the Circuit Clerk of Wood County, a non-judicial office, requiring her resignation as magistrate court clerk, constitutes leaving work "voluntarily without good cause involving fault on the part of the employer." Consequently, the claimant is disqualified from obtaining unemployment compensation benefits under W.Va.Code 21A-6-3 (1990).

VI.

CONCLUSION

We hold that based upon the rather narrow factual construct of this case, when a judicial employee chooses to become a candidate for a non-judicial office and subsequently resigns the judicial position, that resignation constitutes leaving work "voluntarily without good cause involving fault on the part of the employer," therefore disqualifying that judicial employee from receiving unemployment compensation benefits under W.Va. Code 21A-6-3(1) (1990).

Reversed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.